# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 21-0066V

| | |
|---|---|
| AMY SCHWALM,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: March 21, 2024 |

*Edward M. Kraus*, Kraus Law Group, LLC, Chicago, IL, for Petitioner.

*Emilie Williams*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On January 5, 2021, Amy Schwalm filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on November 5, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Because the parties could not informally resolve the claim, they were ordered to file briefs setting forth their respective arguments, and were notified that I would resolve

---

[1] Because this Ruling/Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

this dispute via an expedited "Motions Day" hearing, which ultimately took place on March 15, 2024.

As discussed below, I find Petitioner entitled to compensation, and award her **$50,000.00** for her actual pain and suffering, plus **$2,875.37** for out-of-pocket medical expenses, for a total of **$52,875.37**.

I.   **Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## II. Ruling on Entitlement and Damages

After listening to the arguments of both sides, I issued an oral ruling on both entitlement and damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A), at the conclusion of the March 15, 2024 hearing. An official recording of the proceeding was taken by a court reporter, although a transcript has not

yet been filed in this matter. I hereby fully adopt and incorporate that oral ruling as officially recorded.

### A. Entitlement

#### a. Ruling

Respondent argues that there is not preponderant evidence to show that Petitioner experienced shoulder pain within 48 hours of vaccine administration. Respondent's Response to Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Opp.") at 7-8. (ECF No. 37). During the hearing, Respondent also postulated that Petitioner failed to demonstrate that she suffered a reduced range of motion within the first six months of vaccinations.

The Vaccine Act does not specify *when* the reduced range of motion should first manifest, as it does for the onset of shoulder pain. Rather, the QAI states only that the "pain and reduced range of motion [must be] limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10). *See Bolick v. Sec'y of Health & Hum. Servs.,* No. 20-893V, 2023 WL 8187307, at *7 (Fed. Cl. Oct. 19, 2023); *Robuck v. Sec'y of Health & Hum. Servs.*, No. 20-0465V, 2023 WL 6214986, at *6 (Fed. Cl. Aug. 21, 2023). There is evidence in the record that Petitioner exhibited a reduced range of motion. *See* e.g., Ex. 7 at 6. Thus, I find that Petitioner has fulfilled this criterion.

Next, Respondent argues that Petitioner's medical records do not demonstrate the onset of a left shoulder injury within 48 hours of vaccine administration. Opp. at 9-10. In support of this argument, Respondent states that Petitioner did not report her shoulder pain to a treating physician until four months and 10 day following vaccination, on March 15, 2020,despite several intervening visits. Opp. at 10; Ex. 10 at 1.

I do credit Respondent's argument that the first report of a shoulder injury more than four months after vaccination is a significant period of time to wait. However, the existing record favors Petitioner's side of this fact dispute, albeit barely. One fact that preponderates in Petitioner's favor is that she is a pharmacist, and in general many medical providers do tend to self-treat SIRVA injuries in the initial weeks and months post vaccination. Petitioner also reports that she was taking the maximum dose of over-the-counter pain relievers (ibuprofen and acetaminophen) to treat her flu symptoms and thus, her pain and seemed to resolve for a short period of time. Ex. 10 at 1-2. When Petitioner did report her shoulder pain to a medical provider on March 15, 2020, she reported that she "got my flu shot 11/5/2019 and my left upper arm (lower deltoid area) has been in pain nonstop ever since. *Id.* Similarly, when Schwalm presented to Dr. Panozzo in-office in May 2020, it was noted that Ms. Schwalm had "left arm pain since receiving flu vaccine

in November/pain when lifting." Ex. 3 at 8-9; *see also* Ex. at 7 (In October 2020, Dr. Clark noted "L arm pain-s/p flu shot."); Ex. 9 at 8 (Orthopedist, David Hamming, M.D., noted that Petitioner had gotten the flu shot in November 2019 "and has had pain since.); Ex. 9 at 14 (the MRI report states it was indicated for "left shoulder pain since vaccination November 2019.")  In addition, Petitioner's pharmacist colleague, Ms. Wegrzyn, averred that she received her flu vaccination the same day as Petitioner and recalled that Petitioner complained to her of left arm pain that very day. Ex. 14 at 1. Thus, I find that Petitioner has satisfied her burden on this element as well.

### b. Other Requirements for Entitlement

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. Petitioner has therefore established that she suffered a Table SIRVA, satisfying all other requirements for compensation.

### B. Damages

As discussed above, I issued an oral ruling on damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A), at the conclusion of the March 15, 2024 hearing. I hereby fully adopt and incorporate that oral ruling as officially recorded. In another recent decision I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y Health & Hum. Servs*., No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022) to the instant Ruling and Decision. Additionally, the official recording of my oral ruling includes my discussion of various comparable cases as well as specific facts relating to Petitioner's medical history and experience that further informed my decision awarding damages herein.

### C. Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, pursuant to Section 12(d)(3)(A), **I find that $50,000.00, represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[4]

---

[4] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-

**Accordingly, I award Petitioner a lump sum payment of $52,875.37 (consisting of $50,000.00 for her pain and suffering and $2,875.37 for her out-of-pocket medical expenses) in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

                                                        **s/Brian H. Corcoran**
                                                        Brian H. Corcoran
                                                        Chief Special Master

---

0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.